UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN LEE WIECZOREK,

    Petitioner,                                                    Case No. 08-12334-BC

v.                                                              Hon. Thomas L. Ludington

SHIRLEE A. HARRY,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner John Lee Wieczorek, presently confined at the Carson City Correctional Facility in Carson City, Michigan, filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 30, 2008. Petitioner was convicted by a jury in the Macomb County Circuit Court of one count of first-degree criminal sexual conduct, Mich. Comp Laws § 750.520b(1)(f) and one count of assault with intent to do great bodily harm, Mich. Comp Laws § 750.84. He was sentenced as a fourth felony habitual offender, Mich. Comp Laws § 769.12, to between thirty and one hundred years in prison on the first-degree criminal sexual conduct conviction, and a concurrent sentence of six to one hundred years in prison on the assault with intent to do great bodily harm conviction.

I.

The relevant facts surveyed by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), are as follows.

> On the evening of May 13, 2004, defendant picked up the victim on Eight Mile Road in Detroit. The victim testified that she agreed to have sex with defendant in exchange for money. Defendant drove his company truck to a dark area behind a factory off Eight Mile Road. The victim testified that as soon as defendant parked, he punched her in the face, and thereafter pulled her hair and repeatedly struck her in the face and head. Defendant then pulled down his pants, held the victim's head,

and briefly "stuck his penis" in her mouth. Defendant then pulled down the victim's pants, directed her to kneel, and announced that he was going to have anal sex with her. Defendant placed his penis in the victim's anus briefly, as he continued to pull her hair and punch her. Eventually, the victim unlocked and opened the passenger side door, and rolled out of the truck onto the ground. Defendant "jumped out [of the truck] on top of [the victim] and started punching [her] again in the face." He then allegedly choked her and threatened to kill her. The victim managed to escape, and obtained a ride to a nearby gas station where Richard Radtke, her former husband, was waiting. The victim did not report the matter to the police.

On May 14, 2004, the police questioned defendant after his company's foreman reported that blood, vomit, and hair were in the truck that defendant had returned. Testimony from the foreman and police officers revealed that there was a "large amount" of "blood splatter throughout the passenger side," "smears on the window," "blood splatters" on the floor, roof, and seat, and hair "wrapped around" the window handle. Defendant gave four different explanations about what happened in the truck. Defendant first stated that he had cut his finger, but later claimed that he had assaulted a female prostitute on Eight Mile Road after she attempted to rob him at knifepoint. After learning about defendant's arrest, the victim contacted the police. DNA testing of the blood found in the truck matched a DNA sample taken from the victim. Testing of blood found on the shirt defendant was wearing on May 13, 2004, revealed a mixture of defendant's and the victim's DNA. But "[m]ost of the blood was from [the victim]."

Defendant testified on his own behalf, and claimed that he was acting in self-defense. Defendant admitted that he solicited the victim for oral sex. He claimed, however, that after he parked and pulled down his pants, the victim brandished a knife, demanded money, and indicated that her accomplice was nearby.[1] As the victim reached for defendant's money, he struck her and forced her out of the passenger side door. Defendant struck the victim again when she held onto the door, and they both fell out of the truck. Defendant got back in the truck and left. Defendant claimed that he repeatedly lied to the police to conceal his act of soliciting a prostitute.

*People v. Wieczorek,* No. 263592, 2006 WL 3613786, at *1–2 (Mich. Ct. App. Dec. 12, 2006).

Petitioner's conviction was affirmed on appeal. *Id.*; *see also People v. Wieczorek*, 731 N.W.2d 697 (2007) (denying permission to appeal to the Michigan Supreme Court).

Petitioner subsequently filed a petition for writ of habeas corpus. On August 13, 2008, the

---

[1] The victim denied possessing a knife. (footnote original).

Court granted Petitioner's motion to hold the petition in abeyance in order to permit him to complete post-conviction proceedings in the state courts. He attempted to obtain state court transcripts to support his speedy trial claim and affidavits to support his ineffective assistance of counsel claims. The trial court denied Petitioner's request for the transcripts, because Petitioner had previously been provided all of the pre-trial and trial transcripts. *People v. Wieczorek,* No. 2004-3466-FC (Macomb County Circuit Court, June 2, 2008). The Michigan appellate courts denied Petitioner's appeal from the denial of his request for the transcripts, *People v. Wieczorek*, No. 287157 (Mich.Ct.App. January 21, 2009), as did the Michigan Supreme Court, *People v. Wieczorek*, 771 N.W.2d 758 (2009).

On April 7, 2010, this Court reinstated the petition to the Court's active docket. Petitioner seeks habeas relief on the following grounds:

I. Whether venue was proper in Macomb County, Michigan.

II. Whether Petitioner was deprived of the right to a speedy trial.

III. Whether Petitioner was deprived of the effective assistance of trial counsel.

II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. And "where factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1); *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786 (2011). To obtain a writ of habeas corpus from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III.

### A.

Petitioner first contends that the Macomb County Circuit Court was not the proper venue to prosecute him, because the crimes that he was charged with took place in Wayne County,

Michigan. In rejecting his claim, the Michigan Court of Appeals noted that although a trial should take place in the county where the crime was committed, Mich. Comp Laws § 762.3(1) indicates that where an offense is committed on the boundary line of two counties or within one mile of the dividing line between the two counties, the criminal offense may be prosecuted and punished in either county. Because the offenses took place within one block of Eight Mile Road, which is the boundary line between Macomb County and Wayne County, venue for the prosecution was proper in Macomb County. *Wieczorek*, Slip. Op. at * 2.

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The Michigan Court of Appeals concluded that it was proper to try Petitioner in Macomb County under Michigan Law because the crimes took place within one mile of the boundary between Macomb County and Wayne County. The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976. The Sixth Circuit has noted that "[a] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Petitioner is not entitled to habeas relief on his first claim.

B.

Petitioner next contends that his right to a speedy trial was violated.

Petitioner was arrested for these crimes on May 14, 2004, but he was not formally charged with the crimes until September 20, 2004. Petitioner's trial began on May 10, 2005 and concluded

on May 12, 2005. Petitioner alleges that the delay in bringing him to trial violated the 180 day rule set forth in Mich. Comp Laws § 780.131 and his Sixth Amendment right to a speedy trial.

The Michigan Court of Appeals rejected Petitioner's claim, although they addressed it primarily as a violation of the 180 day rule:

> We agree with the trial court that there was no violation of the 180-day rule in this case. The record shows that the prosecution made a good-faith effort to bring defendant to trial, and that the largest delay was not attributable to the prosecution. The record shows that defendant filed several pretrial motions. Defendant also requested at least four adjournments, which caused delays of several days. For example, at defense request, a pretrial hearing was adjourned from November 22, 2004, until December 15, 2004. A hearing scheduled for January 19, 2005, was adjourned until February 18, 2005. A hearing scheduled for January 25, 2005, was initially adjourned until February 18, 2005, and again adjourned until March 3, 2005. In sum, although defendant was not brought to trial within 180 days, the delay was principally caused by the defense, and there is no indication that the prosecutor failed to make a good-faith effort to bring the criminal charges to trial within the required time. This claim does not warrant reversal.

*Wieczorek*, Slip. Op. at * 8 (footnote omitted).

As an initial matter, Petitioner is not entitled to habeas relief on any claim that the state courts violated Michigan's 180 day rule. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Thus, to the extent Petitioner contends that Michigan's 180-day rule was violated, he is not entitled to habeas relief. *See Burns v. Lafler*, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004).

Petitioner has also failed to show that the State of Michigan violated his Sixth Amendment right to a speedy trial.

The Sixth Amendment also provides a constitutional right to a speedy trial. U.S. Const. Amend. VI. To determine whether a speedy trial violation has occurred, the court must consider

the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is determinative, rather a court must weigh the factors and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Id.* at 533. The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 129 S. Ct. 1283, 1290 (2009) (citation omitted).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Courts have generally found postaccusation delays that approach one year to be "presumptively prejudicial". *Id.* 505 U.S. at 652, n. 1. Petitioner was arrested for these crimes on May 14, 2004 and was brought to trial almost one year later on May 10, 2005. Because the twelve month delay between Petitioner's arrest and trial is presumptively prejudicial, the remaining *Barker* factors must be reviewed. *See U.S. v. Bass,* 460 F.3d 830, 836 (6th Cir. 2006).

With respect to the second *Barker* factor, the reasons for the delay, the Court must determine "whether the government or the criminal defendant is more to blame for [the] delay." *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005)(citing *Doggett*, 505 U.S. at 651). Delays caused by the defense are to be weighed against the defendant. *Vermont v. Brillon*, 129 S. Ct. at 1290.

Here, Petitioner is not entitled to habeas relief because many, if not most, of the delays were attributable to the defense. Petitioner filed several pre-trial motions and apparently requested four adjournments. In addition, on March 3, 2005, an evidentiary hearing was conducted on Petitioner's motion to suppress his custodial statements to the police. Any delays caused by Petitioner's filing of pre-trial motions is attributable to the defense, for purposes of a speedy trial determination. *See Norris v. Schotten*, 146 F. 3d 314, 327 (6th Cir. 2008). Likewise, the defense counsel's request for adjournments would be attributable to the defense, for purposes of a speedy trial analysis. *See, e.g.*, *United States v. Banks*, 27 F. App'x 354, 358 (6th Cir. 2001). In addition, the need to conduct an evidentiary hearing on petitioner's motion to suppress is also a delay that would be attributable to Petitioner. *See United States v. Kaylor*, 877 F. 2d 658, 663 (8th Cir. 1989).

Moreover, there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris*, 146 F. 3d at 327-28. There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d at 722(quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over Petitioner. *Id.*; *see also Brown*, 498 F. 3d at 531. Although Petitioner claims that the prosecutor delayed the prosecution to give the victim, a drug addict and a prostitute, time to "clean up" so that her credibility before the jury would be improved, Petitioner has presented no evidence in support of his allegation. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See Washington v. Renico*, 455 F. 3d 722, 733 (6th Cir. 2006).

Finally, with respect to the final two *Barker* factors, Petitioner is not entitled to habeas relief

on his speedy trial claim because he has not shown that he asserted a speedy trial right at the time the trial was adjourned or that his defense was prejudiced by the delay. *Burns*, 328 F. Supp. 2d at 722. Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. *See Trigg v. Tennessee*, 507 F. 3d 949, 954 (6th Cir. 1975).

Petitioner contends that the delay in bringing him to trial afforded the victim, a drug addict and prostitute, time to "clean up" and improve her appearance for the jury. A change in a defendant's ability to impeach an unfavorable witness due to the change over time in circumstances under which a witness would testify does not establish prejudice, for purposes of a speedy trial claim. *See United States v. Mohawk*, 20 F.3d 1480, 1486-87 (9th Cir. 1994). Particularly where, as here, there is overwhelming evidence of guilt. Petitioner is unable to establish that he was prejudiced by any delays. *See United States v. Sylvester*, 330 F. App'x 545, 549 (6th Cir. 2009); *U.S. v. Van Dyke*, 605 F. 2d 220, 227 (6th Cir. 1979). Petitioner is not entitled to habeas relief on his second claim.

C.

Petitioner finally alleges that he was deprived of the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two prong test. First, Petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other

words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, Petitioner must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's decision in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance.  *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. at 785.  Thus, consideration of defense counsel's performance on habeas review is "doubly deferential." *Knowles*, 129 S. Ct. at 1420.  This means that "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.  "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" six years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

In his first two claims, Petitioner argues that counsel was ineffective for failing to fully cross-examine the victim concerning inconsistent, conflicting, or perjured testimony.  In his related

-10-

second claim, Petitioner contends that his counsel was ineffective for failing to investigate the prior criminal history of the victim and Richard Radtke, in order to impeach their credibility.

The Michigan Court of Appeals rejected Petitioner's first two claims:

> Defendant claims that defense counsel was ineffective for failing to "attempt to cross examine the complaining witness on inconsistent, conflicting, or possible perjured testimony given at preliminary examination, and during trial." Defense counsel did, in fact, question the victim about certain inconsistencies in her testimony at the preliminary examination. Defendant has not identified any other contradictions, or what factual information could potentially be obtained at an evidentiary hearing. As the appellant, defendant is required to do more than merely announce his position and leave it to this Court to discover and rationalize the basis for his claims.
>
> Defendant also argues that defense counsel was ineffective for failing to "investigate [the victim's] and witness [R]ichard Radke's (sic) prior criminal history for purposes of impeachment." But defendant has failed to provide any information regarding what criminal background should have been introduced, on what basis defense counsel could have successfully moved to introduce the evidence, or how he was prejudiced by the omission of the evidence. Furthermore, at trial, the victim testified that she did not initially contact the police because she "had warrants out for [her] arrest." Additionally, evidence was introduced that the victim was a prostitute who used heroin and crack cocaine, and that Radtke was a drug user and acted as the victim's pimp. Against this backdrop, and the evidence against defendant, there is no reasonable probability that additional impeachment evidence would have changed the result of the proceedings.

*Wieczorek*, Slip. Op. at * 5 (citation omitted).

Petitioner has not demonstrated that he was prejudiced by counsel's alleged failure to cross-examine the victim about additional inconsistencies or for failing to obtain any prior criminal convictions to impeach the credibility of the victim and Radtke. At trial, defense counsel impeached the victim with inconsistent statements from the preliminary examination. (Tr. 5/11/2005, pp. 58-61). The victim admitted at trial that she did not initially report the sexual assault to the police because she had warrants out for her arrest. Evidence at trial indicated that the victim was a prostitute who used heroin and crack cocaine and that Radtke was a drug user and acted as

the victim's pimp. Counsel adequately impeached the credibility of the victim and Radtke, as well as bringing out a motive for the victim to fabricate these allegations against Petitioner. Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at trial." *Davis v. Booker*, 589 F. 3d 302, 309 (6th Cir. 2009) (quoting *Brown v. Smith*, 551 F. 3d 424, 433-34 (6th Cir. 2008)). Because the credibility of these two witnesses had already been impeached, Petitioner was not prejudiced by counsel's failure to impeach them with cumulative impeachment evidence. *Id.*

Petitioner next contends that trial counsel was ineffective for failing to obtain an expert to testify in support of Petitioner's claim of self-defense. The Michigan Court of Appeals rejected Petitioner's claim, finding that Petitioner was able to adequately present his self-defense claim through his own testimony describing the victim's alleged attempt to rob him at knife point. If the jury believed Petitioner's testimony that he was subjected to an attempted armed robbery, as well as the jury instructions regarding self defense, he would not have been convicted of the assault. As the Michigan Court of Appeals emphasized, Petitioner has not even explained what possible assistance an expert could have provided. *Wieczorek*, Slip. Op. at * 5.

An expert was not necessary to explain Petitioner's self-defense theory to the jury. *Cf. Socha v. Wilson*, 477 F. Supp. 2d 809, 813 (N.D. Ohio 2007) (trial court did not violate murder defendant's due process rights by disallowing expert opinion evidence regarding psychiatric evaluation of defendant, since state of mind regarding defendant's claim of self-defense was ascertainable without expert testimony). Because Petitioner has not demonstrated that he was prejuduced by counsel's failure to obtain an expert to bolster his self-defense claim, Petitioner is not entitled to habeas relief. *See Langford v. Butler*, 55 F. App'x 462, 463 (9th Cir. 2003).

Petitioner next alleges that counsel was ineffective for not objecting to the prosecution's failure to produce its witness list until the first day of trial. In rejecting this claim, the Michigan Court of Appeals ruled that the record citation provided by Petitioner did not show that the prosecution's witness list was untimely, but instead showed that on the first day of trial, the prosecutor presented a witness list in which he narrowed down the list in order to assist the trial court and Petitioner's counsel. In this new witness list, the prosecutor named the witnesses he intended to call, which included the victim, Radtke, defendant's foreman, and five police officers. The Michigan Court of Appeals further noted that Petitioner did not allege that he was surprised by any of these witnesses. Because there was no basis for a proper objection in this regard, counsel was not ineffective. *Wieczorek*, Slip. Op. at * 5-6.

In the present case, there is no indication that the prosecutor did not provide the defense with a witness list in a timely manner, therefore, there was no basis for counsel to object. Trial counsel was not ineffective for failing to raise a futile objection. *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996)).

Petitioner next alleges that counsel was ineffective for failing to interview him before the preliminary examination in order to effectively challenge the victim's identification of Petitioner as her assailant. In rejecting this claim, the Michigan Court of Appeals noted that identification was not an issue in this case, in that Petitioner raised a claim of self-defense. The Michigan Court of Appeals further noted that Petitioner admitted that he had picked up the victim to engage in oral sex and that DNA testing of blood found on Petitioner's shirt and in the truck matched a DNA sample that had been taken from the victim. *Wieczorek*, Slip. Op. at * 6.

Defense counsel was not ineffective for failing to challenge the victim's identification of

Petitioner as her assailant, in light of the fact that Petitioner did not dispute that he was at the crime scene and that he repeatedly struck the victim in the face and the head. *See Com. v. Clemente*, 893 N.E.2d 19, 48 (Mass. 2008). For Petitioner to have argued simultaneously that he acted in self-defense and that someone else assaulted the victim "could only have undermined his credibility with the jury." *Id.* Counsel was therefore not ineffective for failing to challenge the victim's identification.

Petitioner next alleges that counsel was ineffective for failing to object to Detective Hogan's testimony concerning the forensic crime laboratory reports, arguing that this evidence should be given by an expert in the field.

Detective Hogan testified that he inspected the truck that Petitioner had been driving after the incident. Detective Hogan noticed blood spatter on the window of the truck, on the rear wall of the roof area, on the door, the floor board on the inside of the truck, and on the seats. Detective Hogan was shown hair that another officer had collected from inside of the truck. Detective Hogan had also discovered blood on the inner door jam of the truck. Detective Hogan indicated that he had a little experience with blood splatter evidence and explained that blood splatter is where contact is made with blood and then the blood would splatter to other places. Based on the location of the blood splatter evidence, Detective Hogan believed that there would have to have been more than two blows inflicted by the assailant upon the victim. Detective Hogan also testified that he initiated an investigation into the matter, because based upon the amount of blood, he believed that a serious assault involving a serious injury had taken place inside the truck. (Tr. 5/11/2005, pp. 137-41). Detective Hogan later testified that a DNA report that had been prepared indicated that most of the blood taken from Petitioner's shirt was the victim's blood and a small amount was

Petitioner's blood. (*Id.* at pp. 158-59).

To the extent that Petitioner alleges that Detective Hogan's testimony is hearsay, his claim is without merit. A witness's testimony about his personal observations of an event is not an out-of-court statement and, thus, is not "hearsay." *See United States v. Bursey*, 85 F. 3d 293, 296 (7th Cir. 1996). Detective Hogan's testimony about the amount and location of the blood in Petitioner's truck was based on his own personal observations, therefore, such testimony was not hearsay evidence.

To the extent that Petitioner claims that Detective Hogan did not have the proper qualifications to offer an opinion about blood splatter, his claim also is without merit. Detective Hogan testified that he had some experience dealing with blood splatter evidence and most likely would have been permitted to offer an opinion concerning this evidence, even had an objection been made. Because Petitioner has failed to show a reasonable probability that Detective Hogan's "expert" testimony would have been excluded had an objection been made, Petitioner is not entitled to habeas relief on this claim. *See Pillette v. Berghuis*, 630 F. Supp. 2d 791, 802 (E.D. Mich. 2009); *affirmed in part and reversed in part on other grds*, 2010 WL 4365621 (6th Cir. October 28, 2010).

To the extent that Petitioner is alleging that counsel was ineffective for failing to object to Detective Hogan's testimony concerning the DNA report, since identity was not an issue in this case, Petitioner has not demonstrated that he was prejudiced by counsel's failure to object to Detective Hogan's testimony about the DNA evidence.

Finally, Petitioner contends that counsel was ineffective for not calling his wife as a defense witness to testify that Petitioner told her that the victim attempted to rob him with a knife. The

Michigan Court of Appeals rejected this claim in part by noting that the proposed testimony would have been hearsay and Petitioner had failed to identify any exception to the hearsay rule. *Wieczorek*, Slip. Op. at * 6.

Under Michigan law, a defendant's self-serving hearsay statements are properly excluded from evidence. *See People v. Compton*, 45; 178 N. W. 2d 133 (Mich. Ct. App. 1970). Because Petitioner's wife's testimony would have been inadmissible hearsay evidence and there is nothing in Petitioner's pleadings or in Petitioner's wife's affidavit which show that Petitioner's out-of-court statements to his wife would have been admissible as a present sense impression, an excited utterance, or any of the other exceptions to Michigan's hearsay rule, counsel was not ineffective in failing to call Petitioner's wife as a defense witness. *See Ryder v. Kerns*, 335 F. App'x 529, 537 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. Indeed, Petitioner will not

be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

V.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt. # 1, 9] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED** as an appeal could not be taken in good faith.

                                              s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge

Dated: August 15, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2011.

                                      s/Tracy A. Jacobs
                                      TRACY A. JACOBS